STATE OF DELAWARE, Ex Rel. Margaret M. Lucey, Kathryn S. Lucey and Leighton S. Dorsey, *v.* CHARLES L. TERRY, JR., Secretary of State of the State of Delaware.

(*November* 15, 1937.)

LAYTON, C. J., HARRINGTON and RODNEY, J. J., sitting.

*Alexander Jamison* for petitioners.

*P. Warren Green, Attorney-General,* for respondent.

Superior Court for New Castle County, No. 172, May Term, 1937.

Layton, C. J., delivering the opinion of the Court:

The writ of mandamus issues only where there is a clear and specific legal right to be enforced. *Swift v. State ex rel. Richardson,* 7 *Houst.* 338, 6 *A.* 856, 32 *A.* 143, 40 *Am. St. Rep.* 127; *State ex rel. Cooke v. New York-Mexican Oil Co.,* 2 *W. W. Harr.* (32 *Del.*) 244, 122 *A.* 55. The petitioners insist that they have, under Delaware law, a clear legal right to use the word "Trust" as a part of the corporate name of the corporation they desire to form under the name "Prudential Trust Company." The respondent, the Secretary of State, has refused to receive and file their certificate on the ground that they have no right to use the word as a part of the corporate name. The right of the petitioners and the corresponding duty of the respondent must be sought in the statutes.

In 1879, by *Chapter* 347, *Volume* 16, *Laws of Delaware,* the Insurance Department was established, the chief officer of which was denominated as Insurance Commissioner. He was charged, generally, with the duty "to see that all laws of this State respecting insurance companies are faithfully executed." Every insurance company was required to file annually a full detailed statement of its condition and business on forms prepared and furnished by the Insurance Commissioner; and he was given visitorial and inquisitorial powers over them.

In 1903, by *Chapter* 330, *Volume* 22, *Laws of Delaware,* the Insurance Commissioner was given supervision over all banks (other than National Banks) building and loan associations, trust companies, safe deposit, guarantee and bonding corporations, incorporated under the Laws of Delaware, or doing business in this state. Such companies were required to make to the Insurance Commissioner not less than two reports each year setting forth under appropriate headings the resources and liabilities of the company. The Commissioner was empowered to call for special reports from any company under his supervision whenever, in his opinion, it should be "necessary to a full and complete knowledge of its conditions," and a penalty was provided for noncompliance. He was given also certain visitorial and inquisitorial powers over such companies.

It is not difficult to discover the reason for the legislative action. Broadly and generally, the public are compelled to deal with such companies. The several businesses were impressed with a public interest, and it was manifestly wise to subject them to the supervisory control of the State to safeguard the public against incompetency, mismanagement, oppression and fraud.

In 1899, 21 *Del. Laws, c.* 273, the *General Corporation Law* was enacted. One of its requirements was that the certificate of incorporation "shall set forth: 1. The name

of the corporation, which shall be such as to distinguish it from any other corporation engaged in the same business, or promoting or carrying on the same objects or purposes in this State." *Section* 7. Thereafter one of certain enumerated words, such as "association," "company" was required in a corporate name. Subject to these restrictions the incorporators of a company were free to choose any name whatever.

In 1911, by *Chapter* 190, *Volume* 26, *Laws of Delaware,* under the title, "An Act restricting the use of the word 'Trust' as part of the name of any corporation now existing or hereafter created under the Laws of Delaware, and providing a penalty for the violation thereof," it was provided as follows:

"*Section* 1. That every corporation now existing or hereafter created under the Laws of Delaware, using the word 'Trust' as part of its name, shall be under the supervision of the Insurance Commissioner of the State and shall make not less than two reports during each year to the said Insurance Commissioner, according to the form which shall be prescribed by him, verified by the oaths or affirmations of the President or Vice-President, and the Treasurer or Secretary of such corporation, and attested by the signatures of at least three directors; provided that corporations now existing shall not be required to make such reports until after the first day of June, A. D. 1911.

"*Section* 2. That no corporation now existing or hereafter created under the Laws of Delaware shall use the word 'Trust' as part of its name, except corporations reporting to and under the supervision of the Insurance Commissioner of the State; nor shall the name of any corporation now existing be amended so as to include the word 'Trust' unless such corporation shall report to and be under the supervision of the Insurance Commissioner of the State.

"*Section* 3. That no person, firm, association of persons, or corporation now existing or hereafter created under the Laws of Delaware, except only corporations reporting to and under the supervision of the Insurance Commissioner of the State, shall advertise or put forth any sign as a Trust Company, or in any way solicit or receive deposits or transact business as a Trust Company, or use the word 'Trust,' as a part of his, their, or its name; and any violation hereof shall constitute a misdemeanor and on conviction thereof the offender shall be fined in a sum not exceeding Five Hundred Dollars for each offence; provided, that nothing herein contained shall be construed to prevent any individual, as such, from acting in any trust capacity, as now allowed by Law."

In 1919, by *Chapter* 111, *Volume* 30, *Laws of Delaware,* the office of State Bank Commissioner was established. This officer was given supervision over all State banks, savings banks, trust companies, building and loan associations, and other corporations engaged in like business, and with respect to them he was clothed with the same powers and duties as had been the Insurance Commissioner from whose jurisdiction and supervision they were removed.

In 1931, by *Chapter* 52, *Volume* 37, *Laws of Delaware,* the laws relating to the business of insurance were amended, revised and consolidated. By it the Insurance Commissioner was given general supervision and control of the business of insurance of all kinds, life, fire, marine, casualty, workmen's compensation, suretyship and title insurance, and assessment and fraternal organizations issuing or proposing to pay sick, accident or death benefits.

The restricting *Act of* 1911, despite the changed conditions resulting from the transfer of certain businesses from the supervision of the Insurance Commissioner to that of the State Bank Commissioner, was not specifically amended. It was incorporated in the *Revised Code* of 1935 as *Sections* 2116, 2117, and 2118, under the title "Corporations," in its original language, with the exception that the words "State Bank Commissioner" were substituted for the words "Insurance Commissioner."

In this statutory environment the petitioners make their demand. They contend that the restricting statute is merely regulatory, and in no sense prohibitory. It permits, they say, the use of the word "Trust" as a part of a corporate name by any corporation choosing to use it; but, if so used, no matter what may be the kind of business carried on by the corporation, it then must report to and be under supervision of the Insurance Commissioner or the State Bank Commissioner, as the law may be determined; and the

purpose of the Act, as they view it, was only to protect those corporations who were using the word in their corporate names in the year 1911, and those corporations who might use it thereafter. The failure of the Legislature to amend the insurance laws so as to provide the kind and degree of supervision to be exercised by the Insurance Commissioner over those corporations choosing to use the word as part of the corporate name, and, therefore, under his supervision by their mere election to use the word, is regarded as a casus omissus which the Court may not supply. In brief, in the view of the petitioners, the Act accomplished nothing, and was intended to accomplish nothing, except to require the filing of reports undefined as to their nature, extent or purpose with the Insurance Commissioner by corporations using the word "Trust" in their corporate names over the businesses of which the Commissioner was given no supervision or control.

■ These contentions might, perhaps, be accepted as sound if the first section of the Act is alone to be noticed and given effect. That section, standing by itself, might well be regarded as permissive and merely regulatory. It contains no prohibition whatever. But, the familiar rule of statutory construction requires the consideration of the Act as a whole to ascertain its meaning, purpose and effect. The succeeding sections may not be ignored. The language of *Section* 2 is clearly prohibitory. It cannot be regarded as vain repetition. It declares that no corporation shall use the word "Trust" as a part of its corporate name except corporations reporting to and under the supervision of the Insurance Commissioner. *Section* 3 extends the prohibition and makes a violation of the Act a misdemeanor under penalty of fine. If the Legislature had intended only to provide for the permissive use of the word "Trust" as a part of a corporate name and to regularize that use by the expedient of the requirement that the corporation choosing

to use the word should report to and be under the supervision of the Insurance Commissioner, the first section of the Act would have defined the nature and extent of the reports to be filed and the powers and duties of the Commissioner over the corporations; but it is entirely reasonable to conclude from an examination of the entire Act that the Legislature intended to restrict, and not to enlarge, confirm or protect the use of the word in corporate names.

The Act was in aid of the public welfare. Its design was to differentiate certain businesses which, by reason of their intimate relations with the public were more likely to cause harm through incapacity, mal-administration or fraud than were other businesses of a more general nature in which corporations might engage; and it purposed to place corporations engaged in those businesses which it had been deemed wise to subject to the supervision of the Insurance Commissioner in a distinct class, and to confine the use of the word "Trust" in corporate names to those corporations whose businesses were under his supervision, so that the public might know from the appearance of the word in the corporate name that the corporation's business was under the State's supervisory control. At the time of the enactment corporations engaged in certain businesses were required to report to and be under the supervision of the Insurance Commissioner. With respect to those businesses, he was given well defined power and authority. The nature of the reports or statements required to be made and the extent of the supervisory authority, visitorial and inquisitorial, conferred upon the Insurance Commissioner are set forth in detail in the statutes. It will serve no purpose to summarize them; it is sufficient to say that a reading of them will at once disclose that the Insurance Commissioner was given supervisory control over certain enumerated businesses only. These facts, of course, were in the knowledge of the Legislature, and the purpose of the

second section of the Act clearly would seem to be to confine the use of the word "Trust" in corporate names to those corporations which, from the nature of their businesses, were under the well defined supervision of the State acting through its Insurance Commissioner.

■■ If ambiguity be suggested, the title of the Act may be resorted to as an aid in the ascertainment of legislative purpose. The title declares it to be an Act restricting the use of the word "Trust" as a part of a corporate name. The word, "restrict," means to restrain within bounds; to limit; to confine; so that from a consideration of the Act as a whole, the petitioners' contention is untenable, that the Act is permissive and confirmatory of right in its nature, and that the supervisory control, or jurisdiction, over all sorts of businesses was by the restricting Act conferred upon the Insurance Commissioner by the mere selection of the word "Trust" as a part of the corporate names of the corporations engaged in those businesses.

It is said by the petitioners in their brief that some years after, upon the establishment of the office of State Bank Commissioner, the Insurance Commissioner and the State Bank Commissioner agreed upon a construction of the Act; that the Secretary of State accepted the construction, or rather it would seem, the modification of the Act, and changed the sections of the pamphlet editions of the *General Corporation Law* by substituting "State Bank Commissioner" for "Insurance Commissioner"; and that the codifiers of the present code adopted that construction or modification. They call attention to *Nigro v. Flinn*, 8 *W. W. Harr.* (38 *Del.*) 368, 192 *A.* 685, which holds generally that the codifiers had no authority to amend, alter, change or vary the meaning of any existing law; and that, therefore, the restricting Act is incorrectly set forth in the *Code of* 1935.

Conceding, but not deciding, the correctness of this

conclusion, the petitioners' cause is not helped. By *Chapter 74, Volume 40, Laws of Delaware,* it was enacted that the matters set forth in the *Code* shall establish *prima facie* the laws of the State general and permanent in their nature; and that in case of any inconsistency arising through omission or otherwise between the provisions of the Code and the corresponding portion of legislation theretofore enacted, effect shall be given to such prior enactments.

If, therefore, the petitioners' contention in this regard is to be accepted, recourse must be had to the restricting act as it appears in *Chapter* 190 of *Volume* 26, *Laws of Delaware.* Reading that act in the light of the transfer of the supervision of certain corporations from the Insurance Commissioner to the State Bank Commissioner effected by the act creating the latter office, the result is the further limitation of the right of corporations to the use of the word "Trust" in corporate names, and that right would then seem to be confined to those corporations which are now required to report to and to be under the supervision of the Insurance Commissioner. On the other hand, if *Sections* 2116, 2117 and 2118 of the *Revision of* 1935 correctly set forth the law, then the use of the word would seem to be limited to those corporations which are required to report to and to be under the supervision of the State Bank Commissioner. The situation presented may well be one that requires correction by the Legislature; but whether or not any change has been effected in the restricting *Act of* 1911, there is nothing to indicate that the Legislature has ever deviated from its purpose to restrict the use of the word "Trust" in corporate names to those corporations which it deemed wise to place under the State's supervisory control.

It is not urged, or suggested, that the business in which the proposed corporation seeks to engage is a business which specifically has been placed by law under the

supervision of either department of the State Government. The petitioners content themselves with saying that they expect to submit to whatever supervision the law provides. The Legislature has imposed supervisory control over certain named businesses, and with respect to them has defined the extent and degree of supervision.

The question here is whether the petitioners have shown a clear legal right to use the word "Trust" as a part of the name of the corporation which they desire to form. We are of opinion that they have not shown that right; and that the respondent was justified in refusing to receive and file the certificate presented to him.

The petition is dismissed.