Charles William **BRINTON**, Plaintiff,

v.

**LOCAL BOARD NO. 5 FOR the STATE OF DELAWARE**, Selective Service System, composed of Howard F. Dobson, Chairman, Horace H. Ulmer, Member, Gilbert J. Sloan, Member, John R. Doherty, Jr., Member and George F. Dunn, Member; Clifford E. Hall, State Director of Selective Service for the State of Delaware; and Curtis W. Tarr, Director of Selective Service, Defendants.

**Civ. A. No. 4051.**

United States District Court,
D. Delaware.

Feb. 11, 1971.

Alfred J. Lindh, of Taylor, Lindh & Paul, Wilmington, Del., for plaintiff.

F. L. Peter Stone, U. S. Atty., Norman Levine and Richard D. Levin, Asst. U. S. Attys., Wilmington, Del., for defendants.

## OPINION

CALEB M. WRIGHT, Chief Judge.

Plaintiff Charles William Brinton brought this action against Local Board No. 5, the members thereof, the Delaware State Director of Selective Service ("defendant Hall") and the national Director of the Selective Service System ("defendant Tarr"), seeking a stay of his presently outstanding induction order and mandatory injunctive relief against his induction in the future un-

der the presently existing circumstances. The Court granted a temporary restraining order on plaintiff's behalf on February 2, 1971, in order to prevent the irreparable injury to plaintiff that would result if he was required to submit to induction on February 5, 1971. Upon agreement of counsel for the parties the matter is presently before the Court for decision upon plaintiff's motion for a preliminary injunction.

The following factual summary has been stipulated by and between the parties to be true and correct. Plaintiff was originally assigned 1970 Random Sequence No. 142 by the Selective Service System based upon the fact that he had originally reported his date of birth to Local Board No. 5 as August 12, 1948.

Based upon Section 5(a) of the Selective Service Act of 1967, 50 App.U.S.C. § 451 et seq.; Selective Service Regulations §§ 1631.4, 1631.5 and 1631.7 and Local Board Memorandum No. 99 issued by defendant Tarr, plaintiff's liability for induction is governed by his 1970 Random Sequence Number. The 1970 Random Sequence Number for persons subject to induction born on August 12, 1948, is No. 142; the number for persons born on August 11, 1948, is No. 324. Registrants (not otherwise exempt or deferred) assigned No. 142 were liable for induction during 1970, but those assigned No. 324 were not.

Plaintiff was first ordered to report for induction on December 4, 1970. His induction date was postponed to December 30, 1970, at his request. The date was again postponed until February 5, 1971, at the request of plaintiff's attorney, to permit defendant Tarr's staff to administratively review the claims made in this action by plaintiff. After these claims were rejected by the Selective Service System,[1] defendant Hall and Local Board No. 5 caused the February 5th induction date to be fixed.

Plaintiff's birth was first recorded by the Bureau of Vital Statistics of the State of Delaware ("the Bureau") as occurring on August 12, 1948. Upon plaintiff's request, the Bureau issued a new birth certificate on December 15, 1970, showing the precise time of plaintiff's birth to be 12:03 A.M. Daylight Saving Time, August 12, 1948. Plaintiff requested that the Bureau issue a new certificate that showed his birth based upon Eastern Standard Time. The Bureau declined to do so but on December 22, 1970, issued a new certificate to plaintiff which states the time of his birth as follows:

August 12, 1948     12:03 A.M., D.S.T.
August 11, 1948     E.S.T. 11:03 P.M.

Shortly after this certificate was issued, plaintiff filed a Petition for a Writ of Mandamus in the Superior Court seeking an order to compel the Bureau to issue a birth certificate showing that he was born on August 11, 1948, at 11:03 P.M. Eastern Standard Time and showing no other hour or date as the time of his birth. In a letter opinion and order dated December 28, 1970, Judge William T. Quillen denied the petition with leave to reopen on the basis of further evidence.[2]

■ Plaintiff alleges in his complaint that this Court has jurisdiction under 28

---

1. The plaintiff's Selective Service file, stipulated into evidence by the parties, contains a January 18, 1971, letter to defendant Hall from Walter H. Morse, General Counsel to the Selective Service System, which relies on the addressor's "inquiries" and Judge Quillen's letter opinion in Brinton v. Hudson, C.A. No. 5288 (Sup.Ct., New Castle Cty., 1970) in reaching the following conclusion regarding plaintiff's claim:

It is the opinion of this office that the lawful time is properly defined as

that time which is recognized as lawful by place or community where the event in question took place.

\*       \*       \*       \*       \*

It is, therefore, recommended that the postponement of the registrant's induction (taken at our request for the examination of the time question) be terminated and that you assign him and notify him of his new reporting date in the usual manner.

2. See case cited in note 1 supra.

U.S.C. § 1331, the federal question jurisdictional statute, and under 28 U.S.C. § 1361 because this is an action in the nature of a mandamus to compel the defendants to perform their duty in regard to the assignment to plaintiff of his correct Random Sequence Number. Counsel for the government did not contend that the Court lacks jurisdiction by reason of § 10(b) (3) of the Selective Service Act, 50 App.U.S.C. § 460(b) (3). The Court concludes that under the Supreme Court's interpretation of this section announced in Oestereich v. Selective Service Board, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968) and further elaborated in Breen v. Selective Service Board, 396 U.S. 460, 90 S.Ct. 661, 24 L. Ed.2d 653 (1970), it has jurisdiction of this action despite § 10(b) (3). The Third Circuit's recent decision in Hunt v. Local Board No. 197, 438 F.2d 1128 (filed February 5, 1971) fully supports this conclusion. If plaintiff is correct in his contention that his presently assigned Random Sequence Number is not his proper number, the induction of the plaintiff under that number would be plainly in violation of the legal directives governing the draft lottery. Thus, *Oestereich, Breen* and *Hunt* cover this case.

Plaintiff's contentions are simply stated: He argues that under either state or federal law the correct legal time of his birth is 11:03 P.M., August 11, 1948, and therefore his Random Sequence Number should be 324. Before reaching these questions, however, the Court must concern itself with counsel for the government's argument that a registrant's correct legal birth date—under state or federal law—is irrelevant to the draft lottery.

■ At oral argument, government counsel took the position that the draft lottery is based entirely on the date of birth that each registrant gives to the Selective Service System at the time he registers. Therefore, since plaintiff gave his birthday as August 12th, that is his date of birth for Selective Service purposes whether or not it is his actual date of birth. Moreover, counsel argues, the principle behind the lottery is that each registrant gets *one* random chance at each random sequence number and that it would defeat the purpose of the system to allow this registrant (and any others similarly situated) *two* numbers from which to choose.

Of course, this particular plaintiff has been able to choose between two lottery numbers, because one assumes that the Selective Service System would not have independently discovered his correct date of birth if it is August 11th. Thus, had the Random Sequence Number for August 12th been higher than the last number reached in 1970 and the August 11th number been lower, plaintiff (not having volunteered the information) would in all probability not have been called for induction. This windfall for Brinton, however, does not compel a decision against his claim.

The selection of draftees by the Random Sequence Lottery is an inherently arbitrary system—determining who shall be drafted out of the many who are eligible not on the basis of ability or willingness or aptitude or other rational criteria but rather based completely on chance. The lottery's saving virtue and the reason that the President and Congress chose it over the old and often inequitable "oldest first" system is that at least that arbitrary chance is shared equally among the registrants eligible for induction. The lottery, however, is not one in which participants can pick the number or date on which their chance of induction is determined. The Court sees no reason to introduce this type of a choice into the system.

It is perfectly apparent that the Executive Proclamation [3] authorizing the lottery and Local Board Memorandum No. 99 establishing the lottery procedures do not anticipate that the registrants sub-

3. Executive Proclamation 3945, Random Selection for Military Service, November 26, 1969. 3 C.F.R. at 79.

ject to the lottery will be able to choose the date of the year that their Random Sequence Number will be based upon. The Proclamation states in pertinent part:

> That a random selection sequence will be established by a drawing to be conducted in Washington, D. C., on December 1, 1969, and will be applied nationwide. *The random selection method will use 366 days to represent the birthdays (month and day only) of all registrants* who, prior to January 1, 1970, shall have attained their nineteenth year of age but not their twenty-sixth. The drawing, commencing with the first day selected and continuing until all 366 days are drawn, shall be accomplished impartially. (Emphasis added.)

Similarly, Local Board Memorandum No. 99 speaks of a "birth date drawing" creating a "birth date sequence" for registrants "born" during certain years. Nothing in either of these executive documents would lead a reasonable person to conclude that the actual, historical birth date is of no consequence to the Selective Service System—that it would be satisfactory to use any date selected by the registrant for purposes of the lottery.

Quite to the contrary, the government form upon which a person informs his draft board of his birth date clearly advises the registrant that accurate information is required. The "Classification Questionnaire" filled in and signed by plaintiff in this case carries with it the following warning directly above the place for the registrant's signature:

> Imprisonment for not more than 5 years or a fine of not more than $10,000, or both such fine and imprisonment, is provided by law as a penalty for knowingly making or being a party to the making of any false statement or certificate regarding or bearing upon a classification.

Moreover, the administrative practice in this case belies the government's argu-

ment before the Court. The complaint alleges (and it was not disputed) that defendant Hall, the State Director, stated to plaintiff's counsel that if the Bureau issued plaintiff a new birth certificate specifying his date of birth as August 11, 1948, the induction order would be cancelled. See ¶ 12 of Complaint. To the same effect, the plaintiff's Selective Service file contains a January 18, 1971, letter to defendant Hall from the General Counsel of the Selective Service System (and signed for defendant Tarr) advising him that plaintiff's contention was rejected but upon the theory that the legal time of plaintiff's birth was Daylight Saving Time established by local custom and usage and not mentioning the government's present theory that the legal time does not matter under the lottery system.[4]

It is true, as counsel for the government argued, that the Selective Service System could have written regulations or a Local Board Memorandum requiring that the date of birth given by the registrant on his forms would be his date of birth for lottery purposes. Indeed, this still could be done for future lotteries. But this Court declines to rewrite the administrative agency's directives.

■ This resolution of the government's main contention, of course, leaves the Court with the necessity of determining the correct legal time of the plaintiff's birth. The Court starts by noting that Judge Quillen's denial of plaintiff's petition for a writ of mandamus ordering the State Bureau of Vital Statistics to issue the plaintiff a new birth certificate with solely August 11, 1948, 11:03 P.M. specified as the date of birth does not preclude this Court's consideration of the issue of the legal time of plaintiff's birth. See Judge Quillen's letter opinion in Brinton v. Hudson, C. A.No.5288 (Sup.Ct., New Castle Cty., 1970). Judge Quillen declined to issue the requested order for two reasons: (1) that it was a matter for federal au-

---

4. See note 1 supra.

thorities and (2) that the present record in the case was insufficient to support the claim of a clear legal right to the birth certificate requested. This hardly amounts to an authoritative interpretation of state law or *res judicata*.

Plaintiff's main argument to the Court is that since the Random Sequence Number assigned to him is a matter of federal right, the federally established time in 1948 must govern. In that regard, 15 U.S.C. § 262, 40 Stat. 451 (enacted March 19, 1918) as amended up to 1948 by 41 Stat. 280 (enacted August 20, 1919), 56 Stat. 9 (enacted January 20, 1942) and 59 Stat. 537 (enacted September 25, 1945) provided in pertinent part:

> In all statutes, orders, rules, and regulations relating to the time of performance of any act by any officer or department of the United States, whether in the legislative, executive, or judicial branches of the Government, or relating to the time within which any rights shall accrue or determine, or within which any act shall or shall not be performed by any person subject to the jurisdiction of the United States, it shall be understood and intended that the time shall be the United States standard time of the zone within which the act is to be performed.

Admittedly § 3 of Public Law 89–387, enacted April 13, 1966, 80 Stat. 107, 15 U.S.C. § 260a amends this law to require the use of Daylight Saving Time during a specified period of the year unless a State by law exempts itself from the statute, but this could not retroactively alter the legal time during 1948 when the plaintiff was born.

A reading of the quoted portions of the statute persuades the Court that the only language that might possibly be said to apply to plaintiff's claim is "*  *  * or relating to the time within which any rights shall accrue or determine *  *  **". And even as to this language, the Court is not comfortable with the notion that it clearly covers

this situation where no "rights" actually "accrue or determine" from the time of plaintiff's birth as later employed for purposes of the draft lottery. Of course, it is ridiculous to ask whether Congress intended the statute to cover the present draft lottery, and all that can be gleaned from the legislative history is a congressional desire for uniformity particularly in regard to the fixing of train schedules and other such matters of interstate commerce. Cf. House Report No. 1315 (89th Cong., 2nd Sess., 1966) on the Uniform Time Act of 1966, 1966 U.S.Code Cong. and Adm. News, Vol. 2, at pp. 2111, 2112–14.

Fortunately, the Court need not determine whether or not 15 U.S.C. § 262—making standard time applicable—encompasses the instant situation because a study of Delaware law indicates that the correct legal time in Delaware during 1948, insofar as it can be determined at the present time, was also standard time. Thus, plaintiff's correct birthday appears to be August 11, 1948.

A Delaware statute which became law on March 22, 1923, without the approval of the Governor provided in pertinent part:

> Section I. That from and after the passage of this act, Eastern Standard time shall be the standard time for all official and legal purposes in this state. All State Officials, County officials, Courts, Justices of the Peace, Schools and banks shall conduct their respective offices and duties in accordance with this provision.

This statute is 33 Delaware Laws, C. 197 at 586. It is quite apparent that if this statute was still in effect in August 1948, the Bureau ("State Officials") in affixing the time of birth of plaintiff for "official and legal purposes" should have determined that the legal date of birth was August 11, 1948. According to Delaware law this would be his proper date of birth.

The Court's researches have not uncovered any repealer by the Delaware legislature until the statute was omitted

from the Code of 1953 (after plaintiff's birth) which by implication and force of law did repeal the statute.

The statute was also omitted from the earlier Revised Code of Delaware of 1935, but as all Delaware lawyers practicing at that time will remember the omission of a statute from that Code did not repeal it. The statute which enacted the 1935 Code provided that the Code would only be *prima facie* evidence of the actual law of Delaware at the time and that no omission from it would serve to repeal or amend any law previously enacted. 40 Delaware Laws, C. 74; see also State v. Streets, 6 Terry 52, 66 A.2d 909, 910 (Gen.Sess., Sussex Cty., 1949); State ex rel. Lucey v. Terry, 9 W.W.Harr. 32, 196 A. 163, 167 (Sup.Ct., New Castle Cty., 1937). Therefore, the Court concludes that the 1923 law fixing standard time as the legal time was in all probability still applicable in 1948.

Counsel for the government points out that § 2433 of the 1942 Revised Code of Wilmington contains a city ordinance approved on January 17, 1920, which provides for daylight saving time during the appropriate period of the year.[5] It is quite obvious, however, that a city ordinance passed in 1920 cannot nullify, even in Wilmington, a state statute that was passed three years later. On the contrary, one would imagine that the Delaware statute superseded the city ordinance after 1923. Moreover, even if the city ordinance remained valid in 1948 insofar as the "official time of the City of Wilmington" is concerned, the recording of births and the issuing of accurate birth certificates is a state function. Chapter 25, Art. 2, § 780 *et seq.* of the Revised Code of 1935 makes plain that the State Board of Health had

the ultimate responsibility for the faithful and accurate registration of births (among other things) and had direct control of the Bureau of Vital Statistics. Section 783 of that Code provided that the Board of Health would appoint a "Local Registrar of Vital Statistics" for each district of the state provided that the Board had to appoint the city registrar of Wilmington as the Local Registrar of Vital Statistics for the district of Wilmington. Thus, he was given a state title in order to perform a state function. Elsewhere he was required to keep a separate record for the city. Revised Code of 1935, Ch. 67, Art. 4, §§ 2442, 2443.

In the context of this case, this Court believes that the 1923 Delaware law making standard time the required time for state agencies, etc. must prevail over a contrary city ordinance. It goes without saying that the statute also prevails over any contrary "custom or usage" in Wilmington since the registration of births is a state function under Delaware law.

Thus, it appears to the Court that there is at this point a substantial likelihood that plaintiff will prevail on final judgment. Later researches by counsel and the Court may uncover a presently elusive repealer. In the interim, however, the Court will grant the motion for a preliminary injunction because irreparable injury is clear and imminent and because the plaintiff has demonstrated a substantial likelihood—if not a clear probability—that he will prevail on final judgment.

The foregoing shall constitute the Court's findings of fact and conclusions of law for purposes of Rule 52(a) of the Federal Rules of Civil Procedure.

Submit order in accordance herewith.

---

5. Article 19, § 2433 provides:
  OFFICIAL TIME FOR CITY; STANDARD TIME; EXCEPTION: —The official time of the City of Wilmington, Delaware, shall be standard time Eastern, except from 2 A.M. of the last Sunday in April, until 2 A.M. of the last Sunday in September, in each year, the official time throughout the City of Wilmington, Delaware, shall be advanced one hour, and all Courts, public offices, legal and official proceedings, in so far as they are subject to the Charter, laws and ordinances of the City of Wilmington, Delaware, shall be regulated thereby.