AMERICAN GUARANTY & TRUST COM-
PANY, a Corporation of the State
of Delaware, Appellant,

v.

John W. GREEN, State Bank Commissioner
of the State of Delaware, Appellee.

Superior Court of Delaware,
New Castle.

Aug. 2, 1971.

William T. Lynam, III, and Howard W.
Handelman, of Bayard, Brill & Handel-
man, Wilmington, for appellant.

James W. Garvin, Jr., Deputy Atty.
Gen., Wilmington, for appellee.

McNEILLY, Judge.

American Guaranty & Trust Co. (Amer-
ican) appeals to this Court from a decision
of the State Bank Commissioner on Octo-
ber 26, 1970. Appellant objects to the
Commissioner's alleged authority under 5
Del.C. § 903 to issue a conditional certifi-
cate of authority to transact business. The
appeal is brought pursuant to recently en-
acted 29 Del.C. § 8809(g), i. e.

57 Del.L., Ch. 581, § 8809(g), which
amended Title 29 of the Delaware Code,
provides for the following statutory ap-
peal:

"(g) The Superior Court shall hear all
appeals from the decisions or rulings of
the State Bank Commissioner respecting
the issuance, extension, renewal, suspen-
sion and revocation of licenses and cer-
tificates to transact business; applica-
tions to open a branch office or place of
business; applications for a certificate
of public convenience and advantage;
mergers, consolidations and conversions;
and amending of charters or certificates
of incorporation.

"(1) Any person whose interest is
substantially affected by any of the deci-
sions or rulings, specified in § 8809(g)
of the Commissioner may appeal from
any decision or ruling by filing with the
Commissioner a notice of appeal. The
notice shall be filed within 20 days from
the date of notification of the decision
or ruling of the Commissioner and shall

be signed by the appellant or his attorney. The decision or ruling of the Commissioner shall be stayed pending disposition of the appeal.

"(2) Within 30 days from the filing of the notice of appeal with the Commissioner, the appellant shall file with the Superior Court a copy of the notice of appeal, a copy of the decision or ruling of the Commissioner and any record of prior proceedings or other matters relating to the appeal. The Court shall thereafter have complete jurisdiction of the matter.

"(3) For the purposes of this section, 'person' means any bank, building and loan association, trust company, lending institution, savings institution, individual or organization conducting a banking business of any kind or plan which comes within the provisions of Title 5, Delaware."

American was incorporated on January 6, 1914. Its certificate of incorporation states that the nature of the business for which the corporation was established is, inter alia, "to transact a general trust company business, that is to say, * * *." The company had been actively engaged in business in Delaware since its establishment, having been engaged, among other things, in the business of securing charters and acting as a registrar and transfer agent; but had not actively engaged in the trust company business at anytime prior to the proceedings sub judice.

With respect to the transaction of business as a trust company, the Banking Act treats corporations in three separate classifications:

(a) Corporations whose charters were directly granted or passed by the General Assembly before July 1, 1933 and are deemed revoked for non-use of the legislative franchise (5 Del.C. § 705) ;

(b) Corporations with trust powers under the General Corporation Law

actively engaged in non-trust business in Delaware prior to January 1, 1933 (5 Del.C. §§ 902, 903) ; and

(c) New corporations intended to be formed with trust powers under the General Corporation Law (5 Del.C. §§ 701–735).

All parties acknowledge that American is in the classification designated (b) above, i. e., those corporations which may begin the transaction of trusts business upon obtaining the certificate required by 5 Del.C. § 902, and that the issuance of the certificate is subject to the requirements of 5 Del.C. § 903.

On July 1, 1970 the Company submitted its letter application to the Commissioner for a certificate to begin the transaction of business as a trust company. The application was pursuant to 5 Del.C. §§ 902 and 903 which reads as follows:

§ 902

"No bank or trust company not actively engaged in business in this State prior to January 1, 1933, shall transact any business in this State or open a place of business in this State without having first secured from the State Bank Commissioner a certificate authorizing it to begin the transaction of business and to open a place of business in this State."

§ 903

"(a) The Commissioner shall not give any certificate required by section 902 of this title until satisfied by proper evidence that all the requirements of the charter of the corporation applying for the certificate and all the requirements of this Code and any other laws of this State applicable to such a case have been complied with and that the whole capital stock has been fully paid in cash, unless the charter shall expressly provide otherwise.

(b) No certificate shall be issued until the corporation has filed with the Commissioner a duly certified copy of its

charter and all amendments thereof, and a copy of its by-laws; and thereafter the corporation shall file with the Commissioner a duly certified copy of every subsequent amendment of its charter and of every subsequent amendment of its by-laws and a failure to file within 30 days after any amendment of its charter or by-laws has been effected, shall render the corporation liable to a penalty of $50 to be sued for by the Commissioner in the name of the State of Delaware if he considers such failure to have been wilful.

(c) A fee of $50 for every certificate shall be required by the Commissioner before issuing the same."

In the instant proceedings the Commissioner, as a pre-condition of issuing a certificate of authority required the Company and its stockholders to subscribe to certain stipulations and conditions set forth by him. By letter in the record dated July 31, 1970 the Company returned the conditions to the Commissioner with its objections noted as follows:

"We did not seek the limited certificate, which you now contemplate issuing. We continue to believe that the corporation has broad trust powers, that these powers were not revoked in 1933, that the trust company has complied with 5 Del.C. § 903 and that the company is entitled to an unlimited certificate authorizing it to begin the transaction of business in Delaware. Indeed we find no authority in the banking laws for limiting the company's trust powers."

The Commissioner, nevertheless, insisted upon the conditions and made them part of the certificate of authority issued to the Company on July 31, 1970.

At the time the certificate of authority was issued, the Commissioner asked American to operate under the limited certificate for a while to ascertain whether it would meet the company's needs; and the company acknowledged it would so comply and would renew the matter of an unlimited certificate of authority upon the Commissioner's return from a vacation.

When American sought the Commissioner's further consideration for an unlimited certificate, the Commissioner refused.

The company thereupon filed another letter application for an unlimited certificate pursuant to 5 Del.C. § 903. This application was denied, without a hearing, on the grounds that the company had made "no demonstration of public convenience and advantage" and the stockholders of the company had not joined in the application.

A timely appeal was filed by the company, pursuant to 29 Del.C. § 8809 which had become effective August 5, 1970.

The facts underlying American's application for a certificate of authority under § 903 are not substantially in dispute and the major area of disagreement between the parties concerns the statutory construction of § 903. A clearer understanding of § 903 is gained by considering American's specific factual history in relation to the simultaneous statutory development of bank supervision under the State.

Historically, banks in this State held charters directly from the General Assembly. See 2 Del.L., Ch. XCVI (Bank of Delaware—1796) and 14 Del.L., Ch. 134 (Farmers Bank at Wilmington—1871). Such charters were then regularly extended for twenty-year periods. 10 Del.L., Ch. CCLXXVII (Bank of Delaware).

In order to protect the public welfare the legislature in 1811 prohibited the formation of any bank without an act of incorporation from the General Assembly. 4 Del.L., Ch. CLXVII. This situation was not substantially altered until 1899 when the legislature adopted the General Corporation Law. 21 Del.L., Ch. 273. Charters granted by the legislature were replaced by certificates of incorporation issued by the Secretary of State. However, even the very earliest corporate statutes expressly prohibited the granting of any banking powers. Ch. 273, supra § 4.

The State's direct supervision of banking was initiated in 1903 under the control of the State Insurance Commissioner. 22 Del.L., Ch. 330. See also State ex rel. Lucey v. Terry, 9 W.W.Harr. 32, 196 A. 163 (1938). The Act required semi-annual reports to be submitted to the Insurance Commissioner, who also was given broad powers of examination. Further public protection was provided in 1911 when all companies using "trust" in their corporate title were brought under the supervision of the Insurance Commissioner. 26 Del.L., Ch. 190.

Appellant was incorporated under the General Corporation Law in 1914 with authority inter alia "to transact a general trust company business."

Bank supervision was transferred in 1919 from the Insurance Commissioner to the newly created position of Bank Commissioner. 30 Del.L., Ch. 111. Shortly thereafter in 1921 the legislature first required all trust companies, "not actively engaged in (trust) business" at the time to secure a certificate of authority to transact such business. 32 Del.L., Ch. 103. Certificates were not to be issued until (1) the Commissioner was "satisfied by proper evidence" that all provisions of the company's charter and all applicable laws of the State were complied with, and (2) duly certified copies of the charter, by-laws, and all respective amendments were filed with the Commissioner. The 1921 statute was substantially identical, with minor changes, to § 903 presently under dispute. In 1921 American was not, and never had, actually engaged in any trust business, though it had been and continued to be active in other areas. The present application marks the first attempt by appellant to initiate a trust business. Had appellant applied for a certificate of authority after 1921 and before 1933, it presumably would have had to qualify under § 903's predecessor, Ch. 103, supra § 3.

Prior to 1933 all existing banks and trust companies held charters either by special act of the legislature or by certificates of incorporation similar to American's. In 1933, however, the legislature established a new procedure for the creation of financial institutions after that date. 38 Del.L., Ch. 94. Under the 1933 legislation formation of new trust companies was substantially controlled by special statutes and by the banking authorities. One of the more important provisions required a showing that "public convenience and advantage" would be promoted by the applicant's establishment. Ch. 94, supra §§ 6, 7. The standard of "public convenience and advantage" had been nonexistent before 1933. At the same time the legislature in 1933 revoked for non-use all charters "granted and passed by the General Assembly" to trust companies which had not actively engaged in such business to date. 38 Del.L., Ch. 93(8), Sec. 22. This section, now 5 Del.C. § 705, did not apply to appellant, however, which held a certificate of incorporation under the General Corporation Law.

Though the non-applicability of § 705 to appellant may look like a needless distinction between charters and certificates of incorporation, the entire scheme of banking legislation at that time supports such a distinction. The revocation statute as originally passed was augmented by sections, now deleted for obvious repetitive reasons, which were substantially similar to 32 Del. L., Ch. 103, § 3 passed in 1921 and discussed above. This similarity is most easily seen by comparing sections 2291 and 2310 of the 1935 Delaware Code. In other words, while revoking all inactive charters for non-use, the legislature specifically provided inactive, certificate of incorporation companies with an *alternative* means of applying for certificates of authority.

The existing banking statutes from 1933 until the present time, therefore, have provided explicitly or implicitly for the following four situations: (1) all trust companies in actual operation before 1921 require no certificates of authority, (2) inactive charters granted prior to 1933 were revoked for non-use, (3) inactive, certifi-

cate of incorporation companies are subject to 5 Del.C. §§ 902 and 903, and (4) all new trust companies incorporated after 1933 are subject to 5 Del.C. §§ 721 through 734. Despite the differences between the four situations listed above, all trust companies actually doing business are governed by the same regulations set forth under Chapter 9 of Title 5.

On July 1, 1970 appellant made application under 5 Del.C. § 903 for a certificate of authority. Both parties to this action agree that § 903 is the controlling statute. Appellant enclosed with the application various corporate papers and records believed necessary to satisfy the requirements of § 903. Though appellant inquired about additional materials which might be needed, no such materials have ever been requested. Appellant's application also briefly discussed American's contemplated operations in response, evidently, to an oral request from the Commissioner. In that discussion there appears to be some evidence of a plan to hold registered investment company shares in inter vivos trusts. Subsequently, based upon two different interpretations of the application, disagreement has occurred concerning the question of whether or not American actually applied for a conditional certificate of authority under § 903. This question has become irrelevant, however, in light of the ultimate issue before the Court at this time which arises from the fact that the Commissioner grounds his power to issue a conditional certificate upon the standard of "public convenience and advantage."

The Commissioner issued a conditional certificate on July 31 over the appellant's objections.[1] Appellant objects primarily to the following conditions: (1) All trust operations shall be limited to inter vivos

trusts, (2) only shares of registered investment companies shall constitute the res of the trusts, and (3) no change of ownership or stock voting rights shall be effected without prior approval of the Commissioner. Appellant continued to press the Commissioner for an unconditional certificate, but on October 26 their application was ultimately denied.

The Commissioner contends that he has the discretion under § 903 to reject applications for certificates of authority upon grounds of "public convenience and advantage." In his decision the Commissioner states that the language of Sec. 903(a) incorporates the standard of "public convenience and advantage" which appears in 5 Del.C. §§ 725, 726.[2]

Appellant contends on the other hand that this language does not incorporate the public convenience standard and that the Commissioner has no discretion to exercise under § 903. Having filed the papers required under § 903, appellant alleges that the Commissioner is bound to issue the certificate of authority.

The Court is faced with an issue of statutory construction. Former Chief Justice Layton's observation in this area is pertinent:

" * * * (T)he familiar rule of statutory construction requires the consideration of the Act as a whole to ascertain its meaning, purpose and effect." *Terry,* supra at 166.

Considering the relationship of § 903 to the balance of Title 5 and in light of the legis-

---

1. Though appellant's stockholders signed an agreement to the stipulated conditions incorporated within the certificate, appellant has always questioned the Commissioner's authority to limit their certificate under § 903, as evidenced by appellant's letter to the Commissioner on July 3, 1970.

2. The determination of public convenience and advantage was originally lodged with the Board of Bank Incorporation, but 57 Del.L., Ch. 581, § 8809(f) transferred all of the Board's powers to the Commissioner as of June 22, 1970.

lative history summarized above, I can determine no proper basis for incorporating the standard of public convenience within § 903.

Historically, the language of § 903 in question first appeared in the 1921 statute. There was no standard of public convenience at the time. Nor do I find any legislative intent in 1933 to incorporate the standard within the language of the 1933 statute. The intent of the legislature in 1933 is clear. Old charters were revoked for non-use and new trust companies were subjected to the standard of public convenience. But inactive, certificate of incorporation companies were also specifically provided for under 38 Del.L., Ch. 93(8), § 22. In this section the legislature made no reference to a standard of public convenience and I find no intent to incorporate the standard of public convenience by way of the legislature's repetition of the same general language, emphasized above, which first appeared in 1921. Nor has the merger of the 1921 and 1933 statutory predecessors to § 903 altered the construction of the present statute.

The structure of Title 5 also militates against the incorporation of the standard within § 903. Sections 725 and 726 are necessary and specific steps within the statutory formation of new companies after 1933. The Commissioner is not empowered to impose the standard *generally nor broadly as to all matters* under his control.

On the contrary, the standard is imposed only with regard to companies established after 1933. Whereas formal application for a certificate of public convenience is necessary under § 725, there is no indication within § 903 that similar application would be needed. I note also that when American submitted their application under § 903 the Commissioner never advised them of such a requirement, though appellant inquired generally. In short, I find the standard of public convenience to be inextricably tied to the narrow confines of Chapter 7 and inapplicable to appellant's application for a certificate of authority under § 903.

Appellant contends that the Commissioner has no discretion under § 903. I do not go this far. The language under § 903 certainly provides for some discretion. If the Commissioner's function under § 903 was no more than that of a filing clerk the statute would necessarily only encompass § 903(b). Section 903(a) definitely goes beyond the formalities of § 903(b), but I do not consider the public convenience standard of Chapter 7 to be one of those areas.

The Commissioner's decision, insofar as it was grounded upon his discretion under a standard of public convenience, therefore, is reversed and appellant's application is remanded to the Commissioner's office for appropriate action in line with this decision. It is so ordered.